PEOPLE, PLAINTIFF AND APPELLEE, *v.* ROLDÁN ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action for Murder in the Second Degree.

No. 1389.—Decided July 31, 1919.

EVIDENCE—EXPERT TESTIMONY.—Generally, the examination of an expert witness should be limited to appearances and opinions and he should not be asked to state facts, for the jury might be misled by his conclusions stated as facts.

ID.—INSTRUCTIONS TO JURY—PREMEDITATION.—When there is evidence which might reduce a homicide to less than murder the court errs in refusing to instruct the jury on manslaughter, and this error is rendered more prejudicial to the defendant when the court commits another error by defining murder in the second degree so as to exclude the element of premeditation common to all murders.

ID.—ID.—Improper remarks to the jury by the prosecuting attorney, such as criticizing the action of the defendant in not taking the witness stand, cannot be cured by the court's instructions.

The facts are stated in the opinion.

*Messrs. Arturo Aponte* and *Huyke & López del Valle* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The information in this case charged murder in the first degree. The facts therein alleged were substantially that the defendants, in perpetrating a robbery upon and extract-

ing a sum of money from the person of Guillermo Torres, known as "El Inglés," caused by torture the death of said Guillermo Torres, throwing him, after battering him, into the tank of the aqueduct of Juncos and, with the deliberate and fixed purpose of causing death, prevented the said person from saving his life, throwing stones at him every time he made an effort to emerge from the tank, where he died of drowning.

It is conceded that there was no proof of the alleged torture and no proof of throwing stones or preventing him from coming out of the tank. It was shown that Guillermo Torres died of drowning and there was evidence tending to show that the appellants threw him into the tank. One of the main elements of the crime of murder is the deliberation or premeditation. The deliberation and premeditation in this information seem to be coupled up with the alleged torture. In his opening address to the jury the district attorney told them that he expected to prove that the defendants prevented Torres from coming out of the tank. At the trial, moreover, although there was some circumstantial evidence, only two witnesses gave testimony of the alleged robbery. One of them had been convicted of perjury and sentenced to five days in jail. The other did not see the robbery, but testified that he heard the said Torres say, "Don't kill me and I will return the money." As the whole proof shows that the two appellants and Torres had been gambling and there was a question between Torres and the other two over some play, the proof of the motive of robbery in the resulting alleged homicide seems a little scanty. The information was directed against three defendants of whom the jury found the third, Gaspar Rivera, guilty as an accomplice, and he was subsequently discharged by the court. Immediately before the alleged homicide and near the house of the said Gaspar Rivera, according to the testimony, a dog barked and Torres shot in the air or at the dog. After exclaiming that there was no thoroughfare, Rivera struck Torres.

Thereupon the two appellants threw themselves upon Torres, as did Rivera. According to the principal witness, the robbery then took place and subsequently the three defendants threw Torres, dead or nearly dead, into the tank. There was no proof that Gaspar Rivera took part in the robbery and, as we understand it, this fact is conceded by the Government. The death, it was clearly shown, was produced by drowning.

A medical expert was testifying and was asked to tell whether the wounds were produced by light or heavy blows and whether they were produced before or after death. The examination of an expert should in general be limited to appearances and opinions and he should not be asked to state facts. *People* v. *Rivera,* 25 P. R. R. 757.

While there is perhaps some conflict in the authorities with regard to the particular matters involved, the form of the question was bad and its allowance constituted error. The error was heightened by the fact that the expert was the Mayor of Juncos at the time of the homicide and gave evidence of facts known to him, so that the jury might easily have been misled by his conclusions, stated as facts.

There was evidence tending to show that after Torres shot in the air or at the dog a conflict arose, in which the appellant joined. Now, while the appellants may have taken this occasion deliberately and with premeditation to rob and kill Torres and while the evidence of a struggle among them may not have been convincing, yet such evidence was not only given by Government witnesses, but, even if given in defense, would have raised the issue of whether the homicide was not less than murder. The court, in spite of the request of the defendants, refused to give instructions as to manslaughter. This was error. In the case of *People* v. *Alméstico,* 18 P. R. R. 314, there was no proof that would reduce the homicide from murder to manslaughter.

This error was rendered more prejudicial to the appellants by another one, namely, the instruction in regard to murder in the second degree of which the appellants were

found guilty. It is conceded that this grade of murder was defined so as to exclude the element of premeditation common to all murders. The appellant very well argues that, thus defined, the jury might think that they were convicting for manslaughter. The Government maintains that the instructions must be taken as a whole, but we find nothing in them that cured the positive statement made by the court that murder in the second degree existed when there was neither deliberation nor premeditation.

The fourth alleged error stands out most clearly. The district attorney in his address to the jury said:

"Under the law the defendants have the right to testify or to refuse to testify, and they are also favored by a presumption of innocence. Nevertheless, the fact remains that they have had an opportunity to take the witness stand and their testimony would have been like that of any other witness. They have not testified; they have kept silent, although they were under no obligation to testify. But serious charges have been made in this case, supported by overwhelming evidence which the defendants have not rebutted."

There is almost a single uniform current of authorities that remarks like these are not only erroneous but cannot be cured by the instructions and that a new trial should be ordered by the court. *People* v. *Morris,* 84 Pac. 464–65, and cases cited; *Wilson* v. *United States,* 149 U. S. 60; *People* v. *Brown,* 53 Cal. 66; *Barnard* v. *State,* 122 A. S. R. 736, 2 R. C. L. 428.

This was a case where the facts all occurred in February, 1914. For lack of proof against these and other defendants a writ of habeas corpus was issued on February 21, 1914, and the prisoners discharged.

Nothing was then done for three years and then apparently the two principal witnesses, of whom at least one had told a different story before, informed the police. The information in this case was filed on May 4, 1917, and the appellants apparently have been imprisoned since that time. The appellants draw attention to the fact that the time for

a prosecution for manslaughter has prescribed. With the state of the information and the proof and the lapse of time we are somewhat doubtful if a further prosecution should be had in the case, but we prefer to leave the decision of the matter to the discretion of the officers of the court below.

The judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Justices del Toro, Aldrey and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.